**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRADLEY L. MIDDLETON and CHRISTOPHER H. MIDDLETON, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 4:26-CV-833 HEA |
| SCOTSMAN COIN & JEWELRY, INC., | ) | |
| Defendant. | ) | |

**<u>OPINION, MEMORANDUM AND ORDER</u>**

This matter is before the Court on Defendant's Motion to Dismiss, [Doc. No. 20]. Plaintiffs oppose the Motion. For the reasons set forth below, the Motion is denied.

**Factual Background**

The following allegations from Plaintiffs' Complaint are accepted as true for purposes of this Order. See *Brokken v. Hennepin Cnty*., 140 F.4th 445, 450 (8th Cir. 2025).

Benjamin Middleton ("Ben Middleton") died on January 8, 2021. He was survived by his wife, Kathleen Middleton ("Kathy Middleton"), and three adult sons, Plaintiffs and Steven Middleton. Joseph Canfield ("Joe Canfield") is the son of Kathy Middleton and stepson of Ben Middleton.

Ben Middleton executed the Last Will and Testament of Benjamin L. Middleton on June 1, 2010 (the "2010 Will"), which was modified by a Codicil executed on December 17, 2013 (the "2013 Codicil"). The 2013 Codicil explicitly excludes Joe Canfield from receiving anything from Ben Middleton' s Estate.

The 2010 Memorandum to the 2010 Will (the "2010 Memorandum") and the 2013 Addendum to the 2010 Will (the "2013 Addendum") provide instructions as to the distribution of Ben Middleton' s collection of coins and precious metals (the "Collection") to Plaintiffs, Steven Middleton, and Kathy Middleton.

After Ben Middleton's death, there was a dispute between the Middleton Sons and Kathy Middleton (the "Parties to the Probate") over the governing will, the appointment of the personal representative, and the allocation of the Collection. In order to maintain the status quo while the dispute was pending, the probate court entered a stipulated order on March 22, 2021 , prohibiting the sale of any coins and precious metals from the Collection (the "Stipulated Preservation Order").

The Parties to the Probate participated in a mediation on June 9, 2021. As part of the settlement reached during the mediation, the Parties to the Probate resolved the will contest and the dispute over the ownership of the Collection. Kathy Middleton agreed that Ben Middleton's June 2010 Will, the 2013 Codicil, and the 2013 Addendum would be probated, she released her claim to any coins on the 2013 Addendum, and she agreed that the coins on the 2013 Addendum would

be distributed to the Middleton Sons in accordance with Ben Middleton's testamentary wishes. The Parties to the Probate signed the written Settlement Agreement on July 15, 2021 (the "Settlement Agreement").

The Parties to the Probate further agreed to seek appointment of Plaintiff Brad Middleton as personal representative of the Estate. The Parties to the Probate also agreed that the Middleton Sons could review all of the coins and precious metals from the Collection in order to identify and recover items listed on the 2013 Addendum. In addition, the Parties to the Probate agreed that the Middleton Sons could search and inspect Kathy and Ben Middleton's home, located at 11475 S.W. Muirwood Drive, Portland, Oregon (the "Muirwood Home") for any coins that the Parties to the Probate agreed would be distributed to the Middleton Sons under the 2013 Addendum. Ben Middleton often hid coins in various places on the premises making such a search necessary in order to determine which coins remained. The Middleton Sons conducted the review, inspection, and search for the coins at the Muirwood Home on July 16, 2021.

The Settlement Agreement was approved by the Court on August 11 , 2021 ("Stipulated Order Approving Settlement"). The Stipulated Order Approving Settlement also specified that the Settlement Agreement superseded the Stipulated Preservation Order, which lifted the prohibition on the sale of coins and precious metals from the Collection. The Court also approved the appointment of Brad

Middleton as personal representative on August 24, 2021. At that point, Brad Middleton began to prepare the inventory of assets required in Probate, including determining which coins were sold or not.

On September 24, 2021, Plaintiff Brad Middleton discovered that twelve of the coins from the 2013 Addendum had been sold at an auction or otherwise sold by Defendant.

The sale of these coins was concealed from Plaintiffs. The twelve coins, consisting of $10 and $20 Carson City gold coins, were bequeathed to Plaintiffs Brad Middleton and Chris Middleton under the 2013 Addendum (the "Twelve CC Coins"). The Twelve CC Coins were sold on or about July 23 , 2021, as part of Defendant's Midwest Summer Sale auction and were referred to as the Sheffield Collection, Lots 329-336, 341 , 345, and 377-378. The estimated actual value of the Twelve CC Coins is about $400,000.

Joe Canfield converted the Twelve CC Coins at some time after Ben Middleton' s death and before consigning them to Defendant.

The Twelve CC Coins were the personal property of the Estate and were bequeathed to Plaintiffs Brad Middleton and Chris Middleton under the 2013 Addendum.

Any interest and claim of the Estate and Steven Middleton have been assigned to Plaintiffs.

At some time after Ben Middleton' s death, Joe Canfield, without the legal right to do so, intentionally took the Twelve CC Coins, thereby converting property that rightfully belonged to Plaintiffs, and then consigned them to be auctioned by Defendant.

In July 2021 , Defendant exercised a right to the Twelve CC Coins inconsistent with the rights of Plaintiffs. Defendant auctioned and sold the Twelve CC Coins to unknown third parties on July 23, 2021. The estimated actual value of the Twelve CC Coins is about $400,000.

Defendant' s conduct intentionally deprived Plaintiffs of their rights to the Twelve CC Coins, thereby converting the same as the auctioneer for Joe Canfield. As a direct and proximate result of Defendant' s conversion of the Twelve CC Coins as the auctioneer for Joe Canfield, Plaintiffs have suffered economic damages in the amount of $400,000.

## Legal Standards

**Motion to Dismiss-Rule-12(b)(6)**

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must include "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief... to give the defendant fair notice of...the claim...and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 545 (2007) (internal citations omitted); Fed. R. Civ. P. 8(a)(2). The complaint must “contain sufficient factual matter...to ‘state a claim to relief that is plausible on its face,’ ” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted), and “must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.” *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022) (citing *Twombly*, 550 U.S. at 555). The issue is not whether the plaintiff will prevail, but whether he is “entitled to present evidence in support of his claim.” *Id.*

When analyzing a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Brokken v. Hennepin County*, 140 F.4th 445, 450 (8th Cir. 2025). That said, the Court does not “presume the truth of legal conclusions.” *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (internal citations omitted). The Court's analysis is context specific and “requires the reviewing court to draw on its judicial experience and common sense.” *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

**Failure to Join Indispensable Parties-Rule 19**

Joinder is governed by Rule 19 of the Federal Rules of Civil Procedure. See *Provident Tradesmens Bank &Trust Co. v. Patterson*, 390 U.S. 102, 125 n.22 (1968) (“[i]t has been clear that in a diversity case the question of joinder is one of

federal law"); *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) ("federal courts are to apply state substantive law and federal procedural law"). Rule 19 provides:

> **(a) Persons Required to Be Joined if Feasible.**
>
> **(1)** ***Required Party.*** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
>
> **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
>
> **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
>
> **(2)** ***Joinder by Court Order.*** If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.
>
> **(3)** ***Venue.*** If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.
>
> (b) **When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
>
> **(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

**(2)** the extent to which any prejudice could be lessened or avoided by:

**(A)** protective provisions in the judgment;

**(B)** shaping the relief; or

**(C)** other measures;

**(3)** whether a judgment rendered in the person's absence would be adequate; and

**(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

**(c) Pleading the Reasons for Nonjoinder.** When asserting a claim for relief, a party must state:

**(1)** the name, if known, of any person who is required to be joined if feasible but is not joined; and

**(2)** the reasons for not joining that person.

Fed. R. Civ. P. 19. "A nonparty is indispensable to an action if (1) the nonparty is necessary; (2) the nonparty cannot be joined; and (3) the action cannot continue in equity and good conscience without the nonparty." *U.S. ex rel. Steele v. Turn Key Gaming, Inc.*, 135 F.3d 1249, 1251 (8th Cir. 1998).

When joinder of an indispensable party is not feasible, courts may consider whether "the action should proceed among the existing parties or should be dismissed." Fed. Civ. R. P. 19(b).

## Discussion

### Failure to State a Claim for Conversion

To state a conversion claim under Missouri law, a plaintiff must establish: (1) he is the owner of the property in question, (2) the defendant appropriated the use and possession of such property, (3) such appropriation was unauthorized and wrongful, and (4) the plaintiff was damaged by the appropriation. *Emerick v. Mut. Benefit Life Ins. Co.*, 756 S.W.2d 513, 522–23 (Mo. 1988).

In Count I, Plaintiffs claim they are the owners of the twelve coins having been bequeathed to them in their father's will and the settlement agreement they entered into with their stepmother. This allegation satisfies element one. They allege Joe Canfield misappropriated them and placed them with Defendant as auctioneer. As auctioneer, Defendant is acting on behalf of the tortfeasor, Canfield, and had possession of the subject coins. Indeed, Plaintiffs further allege Defendant advanced money to Canfield in anticipation of the auction of the coins. Element two is satisfied.  Finally, Plaintiffs allege that Defendant wrongfully sold the coins at auction and thereby they were damaged in the amount of $400,000.00, the estimated value of the coins. Plaintiffs' allegations regarding damage fulfills the third element of a cause of action for conversion.

**Failure to Join indispensable parties**

Defendant argues both Canfield and the Estate of Ben Middleton are indispensable parties and the failure to join them in this action requires dismissal.

With regard to Joe Canfield, dismissal for failure to join him as an indispensable party under Rule 19 is not required.

> It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit. See *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 329–330, 75 S.Ct. 865, 869, 99 L.Ed. 1122 (1955); *Bigelow v. Old Dominion Copper Mining & Smelting Co.,* 225 U.S. 111, 132, 32 S.Ct. 641, 644, 56 L.Ed. 1009 (1912). See also *Nottingham v. General American Communications Corp.,* 811 F.2d 873, 880 (CA5) (*per curiam* ), cert. denied, 484 U.S. 854, 108 S.Ct. 158, 98 L.Ed.2d 113 (1987). Nothing in the 1966 revision of Rule 19 changed that principle. See *Provident Bank, supra,* 390 U.S., at 116–117, n. 12, 88 S.Ct., at 741–742, n. 12. The Advisory Committee Notes to Rule 19(a) explicitly state that "a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability." 28 U.S.C.App., p. 595. There is nothing in Louisiana tort law to the contrary. See *Mullin v. Skains,* 252 La. 1009, 1014, 215 So.2d 643, 645 (1968); La.Civ.Code Ann., Arts. 1794, 1795 (West 1987).

*Temple v. Synthes Corp*, 498 U.S. 5, 7 (1990); see also *A.O.A. v. Rennert*, No. 4:11 CV 44 CDP, 2026 WL 1758199, at *1 (E.D. Mo. June 18, 2026)(recognizing the long-held rule "that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." citing *Temple v. Synthes Corp., Ltd.,* 498 U.S. 5, 7 (1990)).

Likewise, dismissal of this action is not mandated by the failure to join the Estate of Ben Middleton. As Plaintiffs correctly argue, the assignment of the claim by the Estate is valid and the Estate is no longer an indispensable party.

> On appeal, [Defendant] argues the district court lacked diversity jurisdiction because [Assignor's] incomplete Assignment left [Defendant] facing the possibility of multiple or inconsistent obligations. See Rule 19(a)(1)(B)(ii). But the district court found that Paul's Assignment transferred to Melanie his

> entire interest in the assets at issue in this litigation; Paul "no longer is an indispensable party and diversity jurisdiction now exists." Sorenson, 2022 WL 329678, at *4. That is the essential Rule 19(a)(1) finding. Joanne did not cross appeal that finding. Therefore, it is established for purposes of this appeal that Paul was not a required party, so we need not consider the equitable Rule 19(b) factors.
>
> For these reasons, the district court did not commit plain error in deciding that it had diversity subject matter jurisdiction without considering § 1359 *sua sponte*.

*Sorenson v. Sorenson*, 64 F.4th 969, 975 (8th Cir. 2023).

## Conclusion

Plaintiffs' Complaint sets out sufficient facts such that it states a plausible cause of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Furthermore, failure to join Joe Canfield and the Estate of Ben Middleton does not require dismissal under Rule 19 of the Federal Rules of Civil Procedure.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Doc. No. Doc. 20] is **DENIED**.

Dated this 20th day of November, 2026.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE